# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DEBORAH SMYTH, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:23-cv-337 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| STATE FARM FIRE AND CASUALTY COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

## ENTRY AND ORDER GRANTING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 29)

---

Presently before the Court is Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment ("Motion") (Doc. No. 29). In the Motion Defendant State Farm Fire and Casualty Company ("State Farm") seeks summary judgment on Plaintiff Deborah Smyth's ("Smyth") claims of breach of contract and bad faith in relation to a dispute over insurance coverage for damage Smyth's roof suffered during a hailstorm. (*Id*. at PageID 129.) Specifically, State Farm argues that Smyth's breach of contract claims are time barred per the terms of the insurance contract. (*Id*. at 134-36.) As to the bad faith claims, State Farm contends that it was justified in denying Smyth's claim and that, regardless of it decision making, Smyth has failed to show she has suffered any damages to support her claims. (*Id*. at PageID 136-46.)

For the reasons discussed below, Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment is **GRANTED**.

## I.    <u>BACKGROUND</u>

This matter arises from damage Smyth's home suffered from a hailstorm on June 18, 2021.

1

(Doc. No. 34-1 at PageID 422.) Smyth owned the property at 3193 Cemetery Road in Xenia, Ohio from 1999 until 2022. (*Id*.) At the time of the hailstorm Smyth's property was insured by State Farm. (*Id*.)

On June 23, 2021, Smyth filed an insurance claim with State Farm and contacted Monster Roofing and Construction ("Monster Roofing") regarding fixing the damage. (*Id*.) In response, State Farm's external inspector, Roger Williams ("Williams"), inspected the damage to Smyth's property. (Doc. Nos. 29-1 at PageID 149; 29-2 at PageID 153-60.) Williams identified damage to 10 turtle vents, flashing to two skylights, and damage to the window wraps. (Doc. Nos. 29-1 at PageID 150; 29-2 at PageID 153-60.) Williams' estimate, which he submitted to Smyth on July 29, 2021, concluded that the total amount of damage, less depreciation, was less than her deductible. (Doc. No. 29-3 at PageID 161-62.) Consequently, no payment was issued. (*Id*.)

Following Williams' inspection, Monster Roofing prepared its own estimate for a total roof replacement, totaling $18,518.15, in September 2021. (Doc. Nos. 29-4 at PageID 164; 34-1 at PageID 423.) In October 2021, State Farm contacted Monster Roofing, requesting additional photographs of the roof to support the request for a total roof replacement. (Doc. Nos. 29-7 at PageID 174; 34-1 at PageID 423.) Monster Roofing submitted photographs on November 9, 2021. (*Id*.)

The photographs were reviewed by a second external inspector, who concluded the photographs did not show wind or hail damage that was new or missed by Williams. (Doc. No. 29-10 at PageID 182.) State Farm further advised Smyth and Monster Roofing that it would need to submit a video verifying that repairs could not be completed without replacing the roof's shingles. (*Id*.) Monster Roofing never submitted a video in accordance with State Farm's request. (Doc. No. 29-4 at PageID 166.)

In December 2021, Smyth engaged James Lake ("Lake"), an insurance appraiser, who subsequently submitted a demand for appraisal to State Farm on December 11, 2021. (Doc. No. 34-3.) Between December 2021 and May 2022, there was no activity on Smyth's file. (Doc. No. 29-7 at PageID 175.) The appraisal demand was subsequently resubmitted by Smyth on May 5, 2022. (*Id.*) The appraisal demand was reviewed by Claim Specialist Babak Haj Heydari ("Heydari"), who determined an appraisal was not applicable to Smyth's claim. (Doc. No. 29-12 at PageID 234.) Heydari memorialized his determination in a letter to Smyth on May 13, 2022, denying the appraisal and citing the corresponding policy language. (Doc. No. 29-8 at PageID 177-79.)

As part of the letter, Heydari included the following language from the policy:

**SECTION I – CONDITIONS**

6. **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

(*Id.* at PageID 179.) Smyth retained counsel in August 2022 to assist her with her insurance claim. (Doc. No. 34-1 at PageID 424.) Ultimately, Smyth paid $14,400 to replace her roof and then sold her home for approximately $300,000. (*Id.* at PageID 239, 241.)

Smyth filed her initial action against State Farm on January 13, 2023 (Doc. No. 29 at PageID 134) and she filed the present action in Greene County Common Pleas Court on October 6, 2023. (Doc. No. 1-1 at PageID 5.) State Farm removed the action to this Court on November 10, 2023. (Doc. No. 1.)

The Motion was filed on March 3, 2025 (Doc. No. 29) and Smyth filed her opposition on March 21, 2025 (Doc. No. 34). State Farm filed its reply on April 4, 2025 (Doc. No. 39). The Motion is ripe for review and decision.

3

## II.    <u>LEGAL STANDARDS FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

As judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the State." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). To the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id*. This is done by looking to other available data, which "include decisions of the state appellate courts, and those decisions should not be disregarded unless" presented with persuasive data that the Supreme Court of Ohio would decide otherwise; instead, such decisions should be given weighty, but not controlling, deference. *Allstate Ins. Co. v. Thrifty Rent-A-Car*

5

*Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); *see also Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 5 (6th Cir. 2021).

**III.   ANALYSIS**

State Farm contends that this matter should be dismissed on summary judgment for four reasons.  First, State Farm points to language of Smyth's policy, which prohibits her from bringing a suit against them more than one year after the event of loss.  (Doc. No. 29 at PageID 134-36.) Second, State Farm argues that it is entitled to summary judgment on Smyth's bad faith claims because it had reasonable justifications for its claims decisions.  (*Id*. at PageID 136-42.)  Third, the bad faith claims must also be dismissed, in State Farm's view, because Smyth did not sustain any damages as a result of those claims.  (*Id*. at PageID 142-44.)  Fourth, the bad faith claims must also fail because State Farm contends it did not act with actual malice or aggravated fraud.  (Id. at PageID 144-45.)

The Court finds that this action can be resolved through State Farm's first and third arguments.  Therefore, the Court will not address State Farm's remaining arguments.

**A.   State Farm's "Suit Against" Provision**

State Farm argues that this Court should dismiss Smyth's breach of contract claim because she failed to file suit in the time permitted under her insurance policy.  (*Id*. at PageID 134-36.) Specifically, Smyth's policy contains the following provision:

**SECTION I – CONDITIONS**

6.  **Suit Against Us.**  No action will be brought against *us* unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.

(Doc. No. 29-8 at PageID 179.)  The storm that caused the damage to Smyth's home occurred on June 18, 2021.  (Doc. No. 34-1 at PageID 422.)  Thus, State Farm contends that the latest Smyth

6

could have brought her action was June 18, 2022. (Doc. No. 29 at PageID 136.) However, Smyth did not file suit until January 13, 2023, meaning this action would be untimely. (Doc. No. 29 at PageID 134, 136.)

In opposition, Smyth argues that consistent with Ohio law regarding "Suit Against" provisions, State Farm waived reliance on this provision. (Doc. No. 34 at PageID 416-18.) Specifically, Smyth points to State Farm's delay in denying the appraisal demand its willingness to consider further evidence of her roof damage as proof State Farm waived reliance on the provision or that there is at least a question of fact. (*Id*.)

Under Ohio law, "an insurance contract may lawfully limit the time within which a suit may be brought on that contract of insurance if the period fixed in the policy is not unreasonable." *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52 (Ohio 1907). An insurer may be found to have waived a limitation of action cause where its conduct or acts, 'which hold out a reasonable hope of adjustment," induces an insured to delay filing suit until after expiration of the limitations period. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St. 2d 427 (Ohio 1981). A waiver has occurred where, "an insurance company must have either recognized liability or held out a reasonable hope of adjustment and by doing so, induced the insured to delay filing a lawsuit until after the contractual period of limitation expired." *Dominish v. Nationwide Ins. Co.*, 129 Ohio St. 3d 466, 468 (Ohio 2011).

In determining whether a waiver had occurred, the Court must look at the "acts" and "declarations" of the insurance company. *Write State Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins.*, 836 F. App'x 362, 364-65 (6th Cir. 2020) (citing *Hounshell*, 67 Ohio St. 2d at 314-15)). For instance, investigating a claim, reopening an investigation, or "mere 'negotiation or discussion'" regarding liability does not suffice to create a waiver. *Write State*, 836 F. App'x at

7

365 (collecting cases). Moreover, partial recognition of liability may not constitute a waiver, where "the insurer 'clearly state[s]' the extent of the liability and refers to the contractual limitations clause." *Write State*, 836 F. App'x at 365 (quoting *Dominish*, 129 Ohio St.3d at 468).

The Court must look to the exchanges between State Farm and Smyth to determine whether a question of fact exists as to whether Smyth was induced to delay filing. As an initial matter, the July 29, 2021 letter from Williams to Smyth informing her that the value of her loss did not exceed her deductible and, consequently, State Farm would not pay her claim. (Doc. No. 29-3 at PageID 161-62.) Subsequent to this finding, Monster Roofing submitted its estimate for a full roof repair and, in October 2021, State Farm requested additional photographs in support of this estimate. (Doc. Nos. 29-7 at PageID 174; 34-1 at PageID 423.) The photographs were reviewed by a second external inspector, who concluded the photographs did not show any new or missing damage. (Doc. No. 29-4 at PageID 182.) State Farm then advised Smyth and Monster Roofing that it would need to submit a video verifying that repairs could not be completed without replacing the roof's shingles. (*Id.*) It is uncontested that Monster Roofing never submitted a video in accordance with State Farm's request. (Doc. No. 29-4 at PageID 166.)

Smyth then submitted an appraisal request that went unanswered for approximately five months, until it was resubmitted by Smyth on May 5, 2022. (Doc. No. 29-7 at PageID 175.) In its May 13, 2022 response to Smyth, State Farm stated:

> We received a copy of the estimate from Monster Roofing and Construction in the amount of $18,518.15 and the differences are due to the following: Complete removal and replacement of the dwelling roof shingles and roof component items vs. partial repairs for removal and replacement of 2 skylight flashing kits and 10 turtle vents that are covered in the State Farm estimate. These items present a question of coverage under the policy.
>
> The appraisal provision in the policy is to resolve differences in the price of repairs which State Farm determined were covered. The provided estimate presents a dispute in coverage under the Homeowners Policy and items not covered under this claim. Appraisal cannot be used to resolve disputes regarding coverage provided by the contract. Therefore, appraisal would not be appropriate as outlined above; the appraisers and umpire have no authority to decide questions of coverage.

(Doc. No. 29-8 at PageID 179.) State Farm then included the "Suit Against Us" language. (*Id*.)

Smyth contends that State Farm's conduct demonstrates it was "at least open to the possibility of making payment on the claim," (Doc. No. 34 at PageID 416), ostensibly because it asked Monster Roofing to submit a video demonstrating repair could not be made without replacing the shingles. Smyth argues that State Farm's failure to timely process her appraisal demand also constitutes a waiver. (*Id*. at 417.)

The Court is unconvinced by these arguments. As an initial matter, Monster Roofing never submitted the video attempting to repair the roof that was requested by State Farm. State Farm had informed Smyth on two separate occasions that her damage did not surpass the deductible and it would not pay on her claim. Additionally, State Farm informed Monster Roofing that it would need to submit the video showing it could not complete repairs without replacing shingles on November 9, 2021, more than six months from when the "Suit Against Us" limitation would expire. It was Monster Roofing who was attempting to disturb that decision, but it failed to do so. This failure to act cannot be attributed to State Farm.

Similarly, State Farm's failure to process her appraisal demand is unavailing. While it certainly is troubling that State Farm did not timely address the appraisal demand, when it did so it denied her right to an appraisal under the policy. Moreover, State Farm's decision to deny Smyth

an appraisal was coupled with a reiteration of the policy provision that required her to file an action within one year of the date of loss or damage. That letter was sent on May 13, 2022. Smyth had over a month to timely file an action against State Farm in which the appraisal requirement could have been litigated.

Furthermore, Smyth states, "State Farm made it clear that it was willing to consider further evidence of roof damage, albeit at Plaintiff's cost, and delayed its adjustment of the claim a total of ten months while the parties were in negotiations." (*Id.* at PageID 417-18.) There is simply no evidence in the record to support the assertion that State Farm, "delayed its adjustment of the claim a total of ten months while the parties were in negotiations." The record before the Court shows consistent denials of coverage and evidences no negotiations between the Parties.

Even if the Court were to entertain Smyth's argument[1] that State Farm was willing to consider additional evidence or was "negotiating," such actions would not constitute waiver. *See Write State*, 836 F. App'x at 365 (collecting cases) (Investigating a claim, reopening an investigation, or "mere 'negotiation or discussion'" regarding liability does not suffice to create a waiver). State Farm repeatedly denied Smyth's claim for coverage and informed her, prior to the expiration of time, that she needed to file suit before the one-year time period expired.

The Court finds that State Farm did not waive the "Suit Against Us" provision of the policy. As Smyth did not file any action prior to June 18, 2022, her claim for breach of contract is untimely and must be dismissed.

---

[1] Smyth also argues that the "Suit Against Us" provision was already addressed by the Greene County Common Pleas Court. (Doc. No. 34 at PageID 416.) It is not apparent what Smyth wants the Court to do with that decision, but it is inapplicable to this Motion. The cited motion was before the common pleas court on a Ohio R. Civ. P. 12(C) motion to dismiss. In relation to the "Suit Against Us" provision, the Greene County Common Pleas Court pertinently stated, "It remains to be seen whether Smyth will ultimately be able to establish that State Farm's actions did, in fact, constitute a waiver of the limitations period. That said, Smyth has sufficiently pled that State Farm waived the limitations period." (Doc. No. 34-4 at PageID 433.) Thus, the Greene County Common Pleas Court's decision was limited solely to whether Smyth had sufficiently pled her claim.

### B. **Smyth's Bad Faith Damages**

The Court next turns its attention to Smyth's bad faith claims.  Specifically, the question of damages.  State Farm's argument in this regard is simple, Smyth cannot not maintain her bad faith claims where she has no damages flowing from the alleged bad faith.  (Doc. No. 29 at PageID 142-44.)  State Farm contends that the $14,400 Smyth paid for a new roof flow from the contract and cannot be used to support her bad faith claim.  (*Id*. at PageID 143.)  It further argues that her claim of lost value on her home is unsupported by any expert testimony.  (*Id*.)  Smyth's position on damages is equally simple, a jury decides the question of damages.  (Doc. No. 34 at PageID 418-20.)

As a matter of first principle, for a plaintiff to recover damages under any cause of action, he must prove that he sustained "actual injury or damage."  *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App. 2d 177, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977) ("Proof of actual injury or damage is essential to recovery . . .").  Ohio law prevents party a from recovering on the same damages in both tort and contract, "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of contract."  *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (Ohio Ct. App. 1996) (emphasis in original).  A jury may not award punitive damages, even upon proof of actual malice, unless they have first determined that the plaintiff is entitled to compensatory damages.  Ohio Rev. Code § 2315.21(C)(2).  Ohio law further requires expert testimony if an issue is "beyond the common knowledge and understanding of a layperson."  *White v. Leimbach*, 959 N.E.2d 1033, 1040 (Ohio 2011).

As an initial matter, the $14,400 for the replacement of the roof would be damages flowing

11

from the breach of contract claim. Smyth's basic assertion in this case is that her policy covered a total roof replacement and State Farm's failure to do so was a breach of the policy. (Doc. No. 3 at PageID 28-29.) Consequently, those damages cannot be attributable to her bad faith claims.

Smyth further claims she lost $10,000 on the sale of her home. (Doc. No. 29 at PageID 143; 29-14 at PageID 242.) Smyth listed her home for $300,000 and sold it for $340,000, though she believes she would have received $350,000 for the home in 2021. (*Id*. at PageID 241-42.) Smyth offers no rebuttal to this argument beyond her contention that a jury should decide. This, however, ignores the basic principle that, "[t]here must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

There is nothing in the record, beyond Smyth's own belief, to support a $350,000 valuation on her property. Smyth's belief alone is insufficient. Home valuations are affected by numerous factors, including everything from number of bedrooms to desirability of the school district to comparable home sales in the area. Particularly relevant to this case are the variances in home price year-over-year. Such complex considerations are beyond the common knowledge of a lay juror. *White*, 959 N.E.2d at 1040. Additionally, as Smyth is unable to prove compensatory damages, she is not entitled to punitive damages or attorney's fees. Therefore, the Court finds that Smyth has failed to present evidence of her damages that flow from her bad faith claims.

IV.    **CONCLUSION**

For the reasons stated above, Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment is **GRANTED**. Smyth's claims are dismissed with prejudice. The Clerk is directed to terminate this matter on the docket.

12

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, April 11, 2025.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE